IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MILDRED ADELIA B., on behalf of
T.M.H.B. (a minor)

      Plaintiff,
  v.          Civil Action No.
                6:18-CV-0629 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| FOR PLAINTIFF | |
| OLINSKY LAW GROUP<br>300 S. State Street<br>Suite 420<br>Syracuse, New York 13202 | HOWARD D. OLINSKY, ESQ.<br>MELISSA A. PALMER, ESQ. |
| FOR DEFENDANT | |
| HON. GRANT C. JAQUITH<br>United States Attorney for the<br>Northern District of New York<br>P.O. Box 7198<br>100 S. Clinton Street<br>Syracuse, NY 13261-7198 | JUNE L. BYUN, ESQ.<br>DANIEL S. TARABELLI, ESQ.<br>Special Assistant U.S. Attorneys |

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the Acting Commissioner, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on June 13, 2019, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Acting Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

ORDERED, as follows:

1)  Plaintiff's motion for judgment on the pleadings is GRANTED.

2)  The Acting Commissioner's determination that plaintiff was not

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3) The matter is hereby REMANDED to the Acting Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

4) The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Acting Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge

Dated: June 25, 2019
Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MILDRED A. B., on behalf
of T.M.H.B. (a minor),

                          Plaintiff,
vs.
                                        6:18-CV-829
Commissioner of Social Security,

                          Defendant.
------------------------------------------------------------x
```

*DECISION* - June 13, 2019

James Hanley Federal Building, Syracuse, New York

HONORABLE DAVID E. PEEBLES

United States Magistrate-Judge, Presiding

A P P E A R A N C E S (by telephone)

| | |
|---|---|
| For Plaintiff: | OLINSKY LAW GROUP<br>Attorneys at Law<br>300 South State Street<br>Syracuse, New York 13202<br>  BY:  MELISSA A. PALMER, ESQ. |
| For Defendant: | SOCIAL SECURITY ADMINISTRATION<br>Office of Regional General Counsel<br>26 Federal Plaza<br>New York, New York 10278<br>  BY:  JUNE L. BYUN, ESQ. |

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1          THE COURT: I have before me an application for a
2   judicial review of an adverse determination pursuant to 42,
3   United States Code, Sections 405(g) and 1383(c)(3). The
4   action is brought by the plaintiff on behalf of her minor
5   daughter T.M.H.B., who I will refer to as the claimant.
6          The claimant was born in November of 2004. She's
7   currently 14 years old; was 12 years old at the time of the
8   Administrative Law Judge's decision. Claimant lives in an
9   apartment in Rome, New York, with her divorced mother and
10  three brothers.
11         Plaintiff attends public schools. She has been
12  classified as having a disability and has an Individualized
13  Educational Plan, or IEP, which provides for her to be
14  mainstreamed with extra help, including in math and reading.
15  She has the benefit of an aide and an after-school situation,
16  a resource room, and she receives speech and language
17  therapy.
18         In 2016 and 2017 the claimant was in sixth grade.
19  Her scores for the first two quarters of that year were
20  fairly low. In ELA-6 in the second quarter she received a
21  59; she received a 68 in Science; a 50 in Social Studies; and
22  a 55 in Math. And that's at page 387 of the Administrative
23  Transcript.
24         There is a notation that the claimant has
25  difficulty comprehending what is read and working

1  independently, and another comment from the Math teacher that
2  the claimant is a sweet girl but needs to stay focused in
3  class.  The claimant has not been held back in school.
4           Physically the claimant is missing all but one big
5  toe and she has a disfigured pointer finger; it's unclear
6  whether it is on the left or right hand.  At page 63
7  claimant's mother testified it was on the left hand, at
8  page 75 it was on the right hand.  Nonetheless, the physical
9  impairments have not had any impact on the claimant's ability
10 to walk, run and manipulate objects.
11          Mentally claimant has been diagnosed with suffering
12 from an Attention Deficit and Hyperactivity Disorder, or
13 ADHD.  The diagnosis was made in late 2012 or 2013.  In an
14 evaluation done on March 7, 2013, at page 417 of the
15 Administrative Transcript, she was labeled as having probable
16 ADHD.  A diagnosis also appears on June 28, 2013 at 409;
17 September 19, 2014 at 436; and August 15, 2014 at 437.  The
18 claimant has been prescribed various medications, including
19 Concerta, Ritalin and Adderall.  The side effects she
20 experiences of those medications is limited to difficulty in
21 sleeping, and for that she's been prescribed Clonidine as a
22 sleep aid.
23          Claimant's primary physician during the time she
24 has been in New York is Dr. Lawrence Glantz.  She has also
25 seen Dr. Linnea Linderman from the same practice.  She has

1  also treated with Behavioral Health Clinic, which is
2  apparently part of Neighborhood Center, where she has seen
3  Dr. Vijayakumar Komareth.  She began there in or about May 7,
4  2013.  That's at page 405 of the Administrative Transcript.
5       She was subject to an initial evaluation on or
6  about June 28, 2013 at age eight, that's at page 408 to 409,
7  where see was described as very hyperactive with tantrums.
8  There was indication that medication has helped, including
9  September 19, 2014, that's at 436.
10      Claimant moved with her family to North Carolina at
11  some point and there underwent an assessment at Barium
12  Springs on January 5, 2015.  That's at 499 to 502.  In that
13  assessment it was noted the following:  Client presents with
14  a persistent pattern of inattention and
15  hyperactivity-impulsivity that interferes with functioning as
16  characterized by often failing to give close attention to
17  details, often has difficulty sustaining attention in tasks,
18  often does not follow through with instructions, often avoids
19  or is reluctant to engage in tasks that require sustained
20  mental effort, and is often easily distracted.  Client also
21  fidgets, often leaves seat in situations in which remaining
22  seated is expected, often talks excessively, often blurts out
23  answers, often has difficulty waiting her turn, and often
24  interrupts or intrudes on others.  A diagnosis of attention
25  deficit/hyperactivity disorder, combined presentation, would

1 be warranted. That's at page 502 of the Administrative
2 Transcript.
3 The evidence including 16E, Exhibit 16E, reflects
4 average to below average skill levels based on testing and
5 that the plaintiff struggles with comprehension. Plaintiff
6 does not appear to have any difficulties with self care which
7 is age appropriate, according to her mother. That is at
8 pages 56 and 82 of the Administrative Transcript. According
9 to the mother, claimant does chores. She does, however, as I
10 indicated previously, experience poor grades in school.
11 Procedurally, plaintiff applied for Supplemental
12 Security Income, or SSI, childhood benefits on behalf of the
13 claimant on October 2, 2013, alleging an onset date of
14 November 11, 2004, which coincides with her date of birth. A
15 hearing was conducted by Administrative Law Judge William
16 Manico on September 11, 2014. ALJ Manico issued an
17 unfavorable decision on December 22, 2014. The matter was
18 remanded, however, by the Social Security Administration
19 Appeals Council on March 24, 2016, based upon the
20 Administrative Law Judge's failure to proffer evidence that
21 was received by the Agency to the plaintiff and to give
22 plaintiff an opportunity to comment on the evidence.
23 On July 27, 2016 Administrative Law Judge Manico
24 conducted a hearing, it was brief, and it was subsequently
25 adjourned in order to afford plaintiff the opportunity to

1   seek legal counsel.
2       On January 27, 2017 a hearing was conducted by
3   Administrative Law Judge Paul Greenberg, who then issued a
4   decision on April 11, 2017, finding that claimant was not
5   disabled at the relevant times and, therefore, the plaintiff
6   was not eligible for the SSI benefits sought.  On March 29,
7   2018 that become a final determination of the Agency when the
8   Social Security Administration Appeals Council denied
9   plaintiff's request for review of that determination.
10      In his decision ALJ Greenberg applied the
11  three-step test for determining childhood disability.  After
12  concluding that the claimant had not engaged in substantial
13  gainful activity, he found that she suffers from a severe
14  impairment, two severe impairments; ADHD and congenital
15  abnormalities in the form of missing portions of the toes and
16  a finger.
17      At step three ALJ Greenberg first concluded that
18  claimant's condition did not meet or medically equal any of
19  the listed presumptively disabling conditions set forth in
20  the Commissioner's regulations, specifically considering
21  listings 101.02 and 101.05 related to the physical
22  impairments, and 112.11 relating to the ADHD.
23      The Administrative Law Judge then went on to
24  determine functional equivalence under the regulations
25  considering the six domains that are set out in the

1 regulations, and concluded that plaintiff did not suffer from
2 an extreme or marked limitation in any of the six domains
3 and, therefore, a finding of no disability was required.
4     As you know, my task is limited to determining
5 whether correct legal principles were applied and the
6 determination that resulted is supported by substantial
7 evidence, defined as such evidence as a reasonable person
8 would find to support a conclusion.
9     In terms of the analysis, childhood disability is
10 subject to determination pursuant to well-established
11 regulations and guidances.  The childhood disability dates
12 back to 1996 when the Personal Responsibility and Work
13 Opportunity Reconciliation Act was enacted, taking effect on
14 August 22, 1996, and providing that an individual under the
15 age of 18 is disabled and, therefore, entitled to exercise
16 benefits if he or she has a medically determinable physical
17 or mental impairment, which results in marked and severe
18 functional limitations, and which can be expected to result
19 in death or which has lasted or can be expected to last for a
20 continuous period of not less than 12 months.  That is
21 specified in 42, United States Code, Section
22 1382c(a)(3)(C)(i).
23     The Agency by regulation prescribed a three-step
24 evaluative process to be employed in determining whether a
25 child can meet the statutory definition of disability.  After

the first step, which inquires whether the claimant has engaged in substantial gainful activity, the test proceeds to step two, much like the traditional five-step test for determining adult disability. It inquires as to whether the child suffers from any medically determinable impairments that either singly or in combination are properly regarded as severe in that they cause more than a minimal functional limitation.

The next step is to determine whether the impairment meets or equals a presumptively disabling condition set forth in the listings. Equivalence can either be medical equivalence or functional equivalence. In terms of functional equivalence, that is guided by regulation, specifically 20 CFR Section 416.926a. It requires examination of six domains, including acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being.

If there is an extreme limitation in one domain, there is functional equivalence. An extreme limitation is defined as meaning more than marked in a single domain. An extreme limitation is an impairment which interferes very seriously with the claimant's ability to independently initiate, sustain or complete activities. A finding of disability is also warranted if there is a marked limitation

in any two of those listed six domains. A marked limitation exists when the impairment interferes seriously with the claimant's ability to independently initiate, sustain or complete activities.

The first argument raised, and I may not be addressing them in the precise order, is whether the listing 112.11 requirements are met and demonstrate medical equivalence. Listing 112.11 relates to neuro-developmental disorders, which can include ADHD. It is satisfied by part A, one of the following; either frequent distractibility, difficulty sustaining attention, or difficulty organizing tasks, or hyperactive and impulsive behavior.

And then in addition there must be an extreme limitation in one of the following four areas or marked in two of the following mental functioning areas, and those include understand, remember or apply information, interact with others, concentrate, persist or maintain pace, and adapt or manage oneself.

The Administrative Law Judge concluded that while plaintiff did suffer from a marked limitation in the area of concentrating, persisting and maintaining pace, he found less than marked limitation in the other specified areas and, therefore, no medical equivalence.

Certainly the marked limitation finding is well supported and documented. It's fairly clear that interacting

1  with others and adapting and managing oneself, there are
2  certainly no marked limitations and substantial evidence
3  would support that.  A little bit closer call with respect to
4  understanding, remembering and applying information.
5  However, I am unable to say that no reasonable person would
6  reach the same conclusion as did the Administrative Law Judge
7  with regard to medical equivalence of listing 112.11, and so
8  I reject that argument.
9        The second relates to functional equivalence and
10 relies to a certain degree on treating source/medical source
11 statements.  The medical source statements, as was argued by
12 plaintiff's counsel, of Dr. Glantz and Dr. Thesee would
13 support a finding of disability based on a functional
14 equivalence argument because those two treating sources have
15 both opined that claimant suffers from a marked impairment in
16 three areas according to Dr. Thesee, and in four areas on
17 behalf of Dr. Glantz.
18       There is also evidence, as was indicated from two
19 of the claimant's teachers, that would support that; Megan
20 Seigott and Samantha Rossi.  That's at page 362 to 368.  But
21 the two treating source opinions were rejected, were given
22 little weight by the Administrative Law Judge who considered
23 them, at page 28.
24       As you know, a treating source's opinion is
25 ordinarily entitled to controlling weight unless inconsistent

1  with other substantial evidence.  If the opinion is not given
2  controlling weight, the Administrative Law Judge must
3  consider several specified factors set forth in 20 CFR
4  Section 404.1527 and 416.927.  They've been referred to on
5  occasion as the Burgess Factors.
6        The failure to apply appropriate legal standards
7  for considering a treating physician's opinions constitutes a
8  proper basis for reversal of an ALJ's decision.  I
9  acknowledge the criticism of some courts of check-the-box
10 forms and acknowledge that they are not as meaningful,
11 perhaps, as forms that flesh out answers to questions;
12 however, I also agree with my colleague Magistrate Judge
13 Feldman from the Western District of New York in *Czerniak*
14 *versus Berryhill*, found at 2018 WL 3383410, that the mere
15 fact that a form is a check-the-box form does not necessarily
16 diminish its relevance in and of itself.  I also note that
17 the Second Circuit recently in *Estrella versus Berryhill*,
18 2019 WL 2273574, decision from May 29, 2019, expressed the
19 importance of going through the analysis required by the
20 regulations to determine weight to be given to a treating
21 source's opinions.
22       In my view, the medical source statements of the
23 two physicians are corroborated by each other, with the
24 exception of the one domain where Dr. Thesee found no marked
25 impairment.  They're also supported by the teachers'

1  statements and the school records.  My problem with the
2  decision of the ALJ is it does not specifically say why he
3  rejects the opinions of those treating sources in the domain
4  of acquiring and using information and attending to task, and
5  it appears to be inconsistent with his finding when he was
6  dealing with medical equivalence of a marked limitation in
7  concentration, persistence and maintaining pace.
8       And I agree with plaintiff's counsel that it
9  certainly appears that there was improvement with medication,
10 but that improvement appears to be in the area of the
11 hyperactivity, but the difficulty in concentrating and
12 comprehending appears to persist as demonstrated by grades,
13 for example, and comments associated with those grades.
14      With respect to functional equivalence, if the
15 medical source statements and the teacher questionnaires are
16 credited, disability would be established.  And clearly there
17 are only two of those domains that are in play; attending and
18 completing tasks and acquiring and using information.
19      The domain of attending and completing tasks is
20 addressed in Social Security Ruling 09-4p.  And the ALJ
21 finding of a marked limitation in concentration, persistence
22 and pace, which is at page 25, is inconsistent again with the
23 finding of no marked limitation in attending and completing
24 tasks.  I looked to listings Section 112.00(e)(3) and
25 compared it with the requirements of SSR 09-4p and I found

1  inconsistence.  It is a harmful error because if there was a
2  finding of marked limitation in acquiring and using
3  information, as both treating sources and the teachers opine,
4  a finding of disability would be required.
5  I also find an issue with regard to evaluation of
6  the symptoms, what we used to call credibility.  As you know,
7  an ALJ must take into account subjective statements
8  concerning symptoms, although the ALJ's not required to
9  blindly accept subjective testimony of a claimant.  Rather,
10 the ALJ retains the discretion to weigh the credibility of a
11 claimant's testimony in light of other evidence in the
12 record.  Obviously, the more support the subjective
13 complaints receive from objective clinical evidence, the more
14 credibility can be attributed to those statements.
15 There are factors which the ALJ must consider when
16 addressing subjective symptomology; claimant's daily
17 activities, location, duration, frequency and intensity of
18 symptoms; precipitating and aggravating factors; the type,
19 dosage, effectiveness, and side effects of medications and
20 other treatments received and other measures to relieve the
21 symptoms.
22 In this case, the ALJ does not flesh out the
23 reasons for discounting the subjective complaints concerning
24 the claimant's symptomology and, as the Commissioner has
25 acknowledged, erroneously rejects the testimony or gives it

1   limited weight, the testimony of the claimant's mother.  The
2   claimant's mother testified at pages 52 to 56 of the
3   plaintiff's symptomology which support findings of marked
4   limitations in the two domain areas I discussed earlier.
5   There is really no reason given for the rejection, other than
6   that it comes from a layperson and a person who is not
7   objective.  The case law, as has been argued, is clear that
8   the testimony of a child's mother describing the child's
9   symptomology is entitled to weight.  And the two cases cited,
10  *St. Louis versus Commissioner of Social Security*, 28
11  F.Supp.3d 142, and *Hickman versus Astrue*, 728 F.Supp.2d 168,
12  confirm that.  At least in this district that is the law.
13          So I find that the analysis of claimant's
14  symptomology was flawed and not adequately explained, and I
15  find that the treating source rule was not followed.  There
16  was very little discussion concerning why those were
17  rejected, especially those of Dr. Thesee, who is an expert in
18  the field.
19          So, I am going to grant judgment on the pleadings
20  to the plaintiff.  I don't find necessarily persuasive
21  evidence of disability.  I think this could use a fresh look
22  from an Administrative Law Judge.  So I will vacate the
23  determination of the Commissioner and remand the matter to
24  the Agency without a directed finding of disability.
25          Thank you again both for excellent presentations.

1　I hope you have a wonderful afternoon.  Thank you.
2　　　　　　　*　　　　　　　　*　　　　　　　　*

5　　　　　　　C E R T I F I C A T I O N

7　　　　I, EILEEN MCDONOUGH, RPR, CRR, Federal Official
8　Realtime Court Reporter, in and for the United States
9　District Court for the Northern District of New York,
10　do hereby certify that pursuant to Section 753, Title 28,
11　United States Code, that the foregoing is a true and correct
12　transcript of the stenographically reported proceedings held
13　in the above-entitled matter and that the transcript page
14　format is in conformance with the regulations of the
15　Judicial Conference of the United States.

　　　　　　　　　　　　　_____
　　　　　　　　　　　　　EILEEN MCDONOUGH, RPR, CRR
　　　　　　　　　　　　　Federal Official Court Reporter